Thank you, Your Honor. We refer to it as Angell. Okay. May it please the Court, my name is Kimberly Cochis and I'm here today on behalf of the appellant's defendants. Currently before the Court is appellant's appeal of the District Court's order certifying a class in this case. I will focus on three key arguments. First, that the named plaintiff's waiver of valuable class member claims creates an irreconcilable conflict of interest precluding certification. Second, why plaintiff's... Is that an adequacy issue? It's an adequacy issue. That's correct. Second, why plaintiff's ACV underpayment theory creates insurmountable predominance issues. And finally, the District Court's error in allowing named plaintiffs to represent a class challenging business practices that they were not injured by. Do you mind if you start with the third because that would be jurisdictional? Sure. That's standing and to me that's the most difficult to accept in your arguments. I would have thought the issues here, this disjunction are Rule 23 issues where Judge Ellison would get abusive discretion. But if it's a standing problem, we never get to Rule 23 and it's de novo by us, right? Correct. That's correct. And that is how we briefed it. We started with standing for the reasons that you just articulated. Whether analyzed under Rule 23 or standing, the District Court erred in certifying a class where the named plaintiffs have no injury in fact. Okay. I'm going to just stop you right there. All five do have financial injury. They all say, and you don't dispute, that all five of them themselves suffered some underpayment according to their legal theory. Under Plaintiff's ACV underpayment theory, all five plaintiffs suffered some sort of injury. That's correct. And I would have thought that right there gets you past – that gives them standing. They may not be typical as to the rest of the class, the putative class, but they have an injury. What's wrong with that logic? Correct. And some courts have looked at it that way, that it's not necessarily a standing discussion. It's a Rule 23 discussion which gets into the typicality arguments that Your Honor noted. But it goes to more than that. If you look at the Supreme Court's decision in Lewis v. Casey, there was a similar issue that is presented here. In Lewis, there was one plaintiff that had been injured by one aspect of not being – being denied access to the courts. But that plaintiff tried to represent a class of people that were denied access on various – for various reasons. That's no different here. Okay. But that – I'm sure you read – it's the only treatise I look to, an appellee cites at Newberg. Right. And Newberg is very critical of courts that have taken that little bit of language in the Supreme Court and said this is an Article III non-injury. You read that portion of Newberg? Yes. I've seen those. But there are other Supreme Court cases that really get at you can't confer this general broad standing, which is what the plaintiffs ask you to do here, is plaintiffs are asking for broad standing with respect to any breach of contract claim, regardless of the fact that they were only injured by a discrete component of the breach. I'm not sure I understand the adjective broad. They just have to show individual standing, and you're pushing back against it. What's your best circuit case that even when a plaintiff has a financial injury, that plaintiff lacks standing? Well, I think that the best circuit cases – I mean, I think there's a number of – Ones that actually stop the litigation, saying you, plaintiff, lack Article III standing. What's your best circuit case? I think the best cases would be the Supreme Court cases, Lewis, Blum v. Uratsky. There's also the Voynich v. Republican National Bank and district court cases. But to be fair to you, you wanted to start with Rule 23. Yes. So go ahead. But as long as we're talking about the lack of injury, I think that that segues well into Rule 23 and the typicality arguments. So we can stay there, if that's appropriate. Yeah. Sure. So even if the Court disagrees that this is a standing argument and believes, like the Third Circuit did at Nilo v. Steak and Shake, that this is really a Rule 23 analysis, not standing, the district court failed to look at it as a Rule 23 analysis. It was a very cursory analysis not taking into consideration that these named plaintiffs either had no injury or suffered a different injury than the unnamed class members. And that makes them atypical of the class. So it is a typicality. I would have thought it is. It's absolutely a typicality. But if the legal theory is – and that's what we look at for a typicality, right? If it's just factual dispute that goes to damages, he's right to certify. But if they have different legal theories, I thought their legal theory is just in Texas, unlike other states, you've got to pay full replacement costs. And every car is insured and every car is titled and registered. So in order to get a replacement cost, you'd have to cover those mandatory fees. It doesn't matter which mandatory fee. It's just you legally under your contract with us didn't give us our full replacement cost. Well, there's several pieces to replacement costs under plaintiff's theory, just assuming plaintiff's correct in their theory. And one piece to that is that there are four plaintiffs who owned their vehicles and were paid full sales tax under defendant's business practices because defendant's business practices was to pay sales tax on owned vehicles. Defendant's business practice with respect to leased vehicles is very different than with respect to owned vehicles. With respect to leased vehicles, there's a different business practice with respect to the settlement of total loss. Different policy language? Different ACV? We don't accept that ACV is the correct policy language to look at. But even if you look at ACV and plaintiff's theory, you still need to look at leased and owned vehicles differently. Even plaintiffs have a separate expert to opine on sales tax and leased vehicles in Texas. I thought you said 95% of this class were paid title and sales tax. 95% of the class. So then, but that implies that almost all of them weren't paid registration. So these named plaintiffs would be typical, disagree with me if you do, as to anyone who didn't have registration, didn't get their registration fee. With respect to typicality, if you want to parse it out into the discrete components of plaintiff's claim, which is how we think this should be viewed, then yes, then there are all the named plaintiffs were not paid certain registration and admission slash safety inspection fees. All of them were paid a title fee. One plaintiff that wasn't paid sales, he or she would be typical of anyone in the class that wasn't paid registration, which is 95%, plus anyone that wasn't paid sales. Your Honor, there are five plaintiffs because there are five defendants. And each plaintiff has privity of contract with only one of the defendants. So with respect to Plaintiff Brown, who is the one named plaintiff that had a leased vehicle and was not paid sales tax, he would be typical of GEICO indemnity insureds who had leased vehicles and were not paid sales tax. But he would not be typical of class members that had insurance with the other defendants. So you don't disagree with at minimum there would be three or four fee-based classes? Correct. With respect to typicality and lack of injury, there would be. There are some other issues such as predominance that would play into this. But with respect to typicality and the lack of injury that the named plaintiffs have, yes. Okay. So you're asking in that regard as to typicality, if there's no standing problem, that Judge Ellison really should have three classes. But what if somebody wasn't paid all three? You're saying they'd have to participate in three different class litigations? Do you understand my question? I think so. So Plaintiffs' Council brought a number of these cases across the country. And so, for example, in Florida, plaintiffs limited their classes to leased vehicle insureds who were not paid sales tax to avoid some of the issues that we're debating here today. Yeah, but it does depend on states because a lot of states don't allow insurance companies to pay. Texas just happens to be more generous, according to them, in terms that there's no ban on recovering fees and registration. I'm not aware of any bans in any states or Texas. Yes, that's true. Texas is silent as to whether or not and what is owed in settlement of a total loss claim. Correct. So with respect to typicality and lack of injury, the district court really just ignored that issue, and it's something that we believe needed to be addressed by the district court, and as such, it was an error not to do so. Switching back to the waiver argument, one of the reasons that plaintiffs bring this very broad class action for underpayment of total loss claims rather than the discrete components that are actually at issue is to avoid some of these lack of injury and standing issues, but they create insurmountable adequacy and predominance issues. Plaintiffs couch their theory of liability as an ACV underpayment theory. In short, plaintiffs argue that the breach of the policy was not the failure to pay sales tax or certain fees, but that overall defendants did not pay enough in total for the loss. This would be okay if plaintiffs were challenging all of the components of ACV, which under plaintiffs' theory includes vehicle value, sales tax, and fees, but they are not. Instead, they are only challenging defendants' business practices with respect to the payment of sales tax on leased vehicles and certain selected fees. Plaintiffs affirmatively waive any claim for vehicle value, a much more valuable claim than the discrete fees the plaintiffs are seeking in this case. Well, you did tell Judge Ellis he explored this in the April hearing in 2022, and they said, well, those are highly unlikely to succeed, and Judge Ellis asked you where is an example of a case where the valuation differential has succeeded, gone past summary judgment to trial and won, and you said I'll have to get you that. Have you found a case since then? In other words, on adequacy, he's saying these people are intelligent enough to be able to waive something they're almost not likely to win, but these mandatory fees, they have a really high chance of winning, so he did the adequacy inquiry, and I don't see an abuse in that calculation. Let them go after what they are pretty confident they can win. They don't want to go after something. I don't hear GEICO saying these people were all underpaid and those are merit claims. Defendants believe that it settles its total loss claims appropriately, whether it be valuation or whether it be the issues in this case. So it really is, I think, the more important analysis is whether or not these claims are actually potentially viable, and there's no question that on an individual basis these claims are viable and they're worth a significant amount of money. Can you point now to one that's won? To individual claims? That went to trial and they won under valuation? Well, we can certainly supplement with individual cases, but I don't think plaintiffs will even dispute that individually these claims have value. Three of the five plaintiffs in our case disputed the vehicle value, and one was even, one claim was even increased. So it is something that occurs. In fact, the plaintiff's law firm brings individual cases about valuation all the time. What plaintiffs are arguing is that it's difficult to certify these cases because of the individual issues relating to valuation. And in the past and right now, there are certainly valuation cases that have been certified. Slade v. Progressive is a good example of a valuation case that was certified. Recently, there was a case in the Third Circuit District of New Jersey against GEICO where a valuation claim was certified. So there's no question that these claims can be certified. And in fact, Plaintiff's Counsel has brought at least 30, probably more than 30, valuation class actions, including in Texas, over the last two years. So it's clear to them it's very aggressively contested. The response is always this is completely individual to the car, each vehicle's valuation. I would assume that it will be. They have not gone that far. Here in this class, I don't know how many vehicles there are, but every single check you sent was cash. They've accepted the valuation. That's what they're saying they accept. They just want to be able to have a class on mandatory fees, just goes to damages, one legal theory. Under Texas law, you didn't pay them, and the contract here. Where's the inadequacy? Is GEICO – are you saying that there were a lot of them that were underpaid? In doing this – well, Your Honor, the Plaintiff's Counsel clearly thinks that this is a systemic issue. These valuation issues are systemic to all of the carriers. Almost all the carriers have been plagued with these valuation class actions. But with respect to the claims here, Plaintiff's could have just brought a straightforward class action seeking the, quote-unquote, mandatory fees. They didn't do that. Instead, they chose to bring an ACV underpayment theory. ACV is some certain – ACV would be vehicle value plus the sales tax plus the fees under Plaintiff's theory. And so when you're looking at that calculation, you would need to know that the vehicle value was correct. So when you talk about waiver, here there's a much greater risk of waiver than in, for example, Slade, where it was just a pure vehicle valuation claim and the claims being waived were de minimis. Here, the claims that are being waived are worth much more, exponentially more, in value than the claims that are actually being brought. All right. The certified class presents a high risk that absent class members will be precluded from litigating these valuable claims. Just because the named plaintiffs made a choice, made an affirmative choice not to contest vehicle valuation, should not allow them to make that choice on behalf of all the unnamed class members. And I see that my time is up. Thank you. May it please the Court. My name is Jacob Phillips, and I represent the named plaintiffs in the class in this case. On seven occasions, district courts have addressed whether the claims at issue here, that is that the actual catch value of a total vehicle includes sales tax and certain regulatory fees, they've addressed whether those claims are certifiable. And on all seven occasions, the answer was yes. This is a very straightforward breach of contract of a form contract. It's identical policy language, same policies and procedures. This is the quintessential class case, as a lot of circuits have put it, breach of a form contract. To just briefly go over some of the, and I guess I'll stick to the same order in which Ms. Coates just argued it. Bringing up the Article III standing, Judge Higginson pointed out that we pointed to Newburgh in several cases. This Court in Fowler said that once the plaintiff establishes individual standing, the extent to which she can represent or she can represent unnamed class members is addressed through Rule 23. It's not a constitutional standing question. The Lewis case, I think it's important to point out, Justice Scalia specifically noted that this was a separate question from class treatment. It was an individual injunction that they were addressing. And the problem with standing is it was a separation of powers issue. And the Court was pointing out if the fact that if a prisoner who didn't have access to enough computers could use that to then force the executive branch to also increase the amount of books or the amount of interpreters or all of these other issues, you would be allowing a single violation against a single prisoner for that person to then be able to force the executive branch to change all of their policies and procedures about completely unrelated issues. And that would be the judicial branch essentially infringing on the executive's authority. So it was an Article III question. Here we have private people suing a private company. There's no Article III separation of powers problems here. Moving to the question of typicality, the standard for whether a named plaintiff's claim is typical of absent class members is basically is it the same legal theory? Does it arise from the same course of conduct? And is it based on the same legal theory? That's what this Court said in the City of Dallas case v. James. If it's the same legal theory, then factual differences doesn't make the claim atypical, right? And so here our legal theory is that the replacement cost less depreciation, which is how Geico defines actual cash value, that the replacement cost less depreciation of a property includes costs reasonably likely to be incurred. That applies to sales tax and that applies to regulatory fees, both of which are mandatory costs imposed by the State of Texas on every transaction. You cannot replace a vehicle without paying sales tax. You can't replace a vehicle without paying these mandatory fees. One's called a fee, one's called a tax, but it's the exact same theory. And that minor factual difference between registration versus sales tax does not make the claims atypical. Almost the entire class just didn't get the registration fees. Correct, yeah. I think 0.002 percent of people got registration fees. They can be excluded from the class theoretically. They're typical of them. Yes. Well, we would submit that they're typical of everyone because the difference between sales tax and registration fees is still the same legal theory. There's no real difference between that. It just goes to damages. It just goes to damages, correct. Well, maybe then I think proposing counsel wanted to start with adequacy and did strongly finish with adequacy, and to me that is the most difficult. You've got plenty of time. I guess the point simplified for me would be how are these people that only had discrete injuries, how can we be confident they will not compromise injuries that would not get them money so they won't vigorously defend? You see my point? Yeah, it's a great question. What I would say is twofold. One, Plaintiff Mr. Brown wasn't paid sales tax, so he can represent everyone, at least for that individual entity, right? The question is going to be facing Judge Ellison. Because Plaintiff Brown is going to be seeking sales tax irrespective of what happens, irrespective of whether the other named plaintiffs are seeking sales tax. Judge Ellison is still going to rule under the policy whether it's reasonably likely to be incurred, right? Let's say Judge Ellison were to say no. Let's say he were to disagree with the plaintiff and say, no, I don't think sales tax is a part of actual cash value. But I do think registration fees are a part of actual cash value, right? Geico would then have the argument that, hey, other four plaintiffs, we may not have paid you registration fees, but we paid you sales tax and we weren't even required to, so now it's an offset. So every named plaintiff has an interest in the ruling that actual cash value includes sales tax. Plaintiff Brown has the interest because he wants to get the sales tax he never received. The other four plaintiffs want that to be the ruling to make sure that Geico can't offset the payment of sales tax against their nonpayment of registration fees. Obviously, sales tax is 6.25% of vehicle value. Registration fees, it's about $100. So their damages would essentially be swallowed if Geico has a claim that, hey, Judge Ellison said we didn't owe sales tax and we paid you sales tax, so now we get to use that as an offset. One quick point that was addressed about hypothetically what if the named plaintiffs who received sales tax are not typical of absent class members who did not receive sales tax. What would that look like on remand? I think what it would look like is that you would have five classes against the five Geico entities. One Geico entity would be represented by Mr. Brown, who can seek registration fees and sales tax and is typical of everybody, basically. The other four would be the other four entities, and they would be represented seeking regulatory fees. So irrespective of whether Geico is right or we're right, the only question is really the scope of the class and whether that needs to be altered slightly. I think Your Honor was implying that I should maybe move on to adequacy since that's the key issue here. Well, no, I'm just one judge. It is where I saw the most problematic, and I was a little confused by what I thought Ellison's solutions were, substitution or opt-out. Yeah. Named plaintiffs get substituted or other people who get noticed get to opt-out if they're going to really lose something much more valuable that Geico owes them. Yeah, I think the opt-out was the key one. So to back up a little bit here and the Slade opinion, the analysis that the court sort of guided, the lower court, because the court was remanding, this court was remanding because the analysis hadn't been done, it's important to recognize that in Slade they actually did waive a claim. They actually dropped a claim, essentially. In Slade, the plaintiff's theory was both that progressive screwed up in calculating the base value, you know, but they also screwed up in doing conditions to that base value. The problem with that is the condition of a vehicle, you have to go look at it, right? How could you ever certify that class if you have to go look at 100,000 vehicles, right? And so they essentially dropped that claim on appeal after the class had already been certified, and so this court said, okay, well, you've got to go back down to address, but here's the guiding analysis. And the guiding analysis is are the claims valuable? If they are, will there be res judicata? And then what's the strategic value of waiving? So here Ms. Koch has said, and it is certainly the case, that GEICO does not believe these claims are meritorious. GEICO thinks that they properly calculate their vehicle's value, right? The claims were paid on, the checks were cashed? Right. For instance, GEICO says that the underlying vehicle value is $19,000, right? GEICO stands by that. They think that their methodology in getting to that amount was correct. There's no suggestion from GEICO that if we were to challenge the underlying value of the vehicle, that it would be meritorious. If GEICO thought that it was meritorious, presumably they would have paid their insurance more money, right? We agree. We don't see any problem with how GEICO calculated the underlying vehicle value under Texas law. Now, Ms. Koch has brought up that some of these cases have been filed across the country, right? A lot of them. It's important to take a step back. Every insurance company uses one of three companies. CCC is the one that GEICO used, and there's two other companies that they use to value a vehicle, right? The other two companies, not CCC, takes the list price of comparable vehicles, which is what CCC does, but then they say, we're not going to use this. Say a vehicle is listed for $20,000, a comparable vehicle. These other two companies say, we're not using that because we don't think it's going to sell for $20,000. We think it's going to sell for $19,000. And so they apply this projected sold adjustment. And so the claim is that's not how the market works anymore. Maybe 20 years ago there was a bunch of negotiation, but those are those claims. CCC, to its credit, doesn't do that. CCC uses the list price of comparable vehicles. So we couldn't bring a claim saying, hey, this projected sold adjustment is illegitimate. They don't apply one, unlike these other cases. So you have to look at what the actual law of the state is, you know, and then how is the underlying vehicle value being determined to determine whether you have a claim. And here there's nothing in Texas law. There's just nothing that suggests CCC is doing it wrong, GEICO is doing it wrong, other than the fact that they're not paying taxes and fees. So there's agreement between the parties that these claims don't have very much value and would be unlikely to succeed. The res judicata aspect of it is, you know, we briefly addressed that. There's some suggestion that the rule against claim splitting doesn't even apply in the class context, and so there would be no res judicata. More importantly, though, than the third point is what's the strategic value of waiver. GEICO is suggesting that there's not much strategic value in waiver because Slade was certified or there's certain other cases that have been certified, which brings up this kind of funny thing where GEICO is arguing that, oh, maybe they're meritorious and they're certifiable. I can just say for myself I'm not in the habit of taking a claim that is likely to succeed and could probably get certified and just not bring it. Like, why wouldn't we have brought the claim if that were the case? What GEICO argued below was that the reason why we weren't bringing the claim was because we knew it couldn't be certified. If that were true, then that would mean that there's a high strategic value. And Judge Ellison actually even said, you know, it seems like there's well-founded skepticism across the parties that this hypothetical claim wouldn't be able to be certified, which would mean that the strategic value of waiver would be high. Setting all that aside, even if the analysis is off a little bit, even if our argument is off a little bit, the point that this Court made in Slade and that Judge Ellison made is that, look, thus far, not a single person has filed, GEICO can't point to a single case in Texas where one of these insureds thought that there was some value to bringing this claim and therefore brought an action. Not a single one. So there's no indication that any absent class member thinks that these claims are valuable and doesn't want us to be waiving it. But maybe they do. If so, that's kind of the whole point of the Rule 23b3 opt-out and notice provision, is that if for whatever reason an insured thinks that the claim is valuable and wants to bring it, they're free to opt out and bring their individual and preserve that individual claim. We don't think that will happen because thus far nobody's filed a case, but the due process protections that are built into the notice and opt-out provision within Rule 23b3 protects absent class members in case that they disagree with our assessment about whether the claim is meritorious or not. Unless there's any questions. I know Ms. Cochise didn't really get to the predominance thing, so I guess I'll just briefly talk about that from the briefing, unless there's more questions about the accuracy question. The predominance argument. I just have one backup question on typicality. You lose. In other words, Judge Ellison did abuse as to typicality if we were to conclude that it's a different legal theory that applies to justify recovering on each of these different fees. If so, if I understand the question, so if the court were to say, you know, we think that the legal theory for why you owe sales tax is different, that if the court were to find that, then I think that the classes would have to be altered in the way that we were discussing earlier. Has that been Geico's argument? Geico's argument, it seems to me, has focused more on Article III. I think what I heard Ms. Cochise saying is that if you're looking just at typicality, that, yes, Geico would agree with that, that if we separate sales tax and registration fees, that the classes can proceed. They just have to be altered to be clear that. Some states do negate the ability to recover, correct? But Texas doesn't? You know what? I'm not sure if there are states that say that. I mean, there are certainly states that. Go on with it. Okay. Briefly about the predominance issue. As I understand the argument related to predominance, it's mostly that Geico or that plaintiffs can't prove that Geico didn't overpay the vehicle value. So when it comes to adequacy, they're saying that maybe they underpaid a bunch of claims, and we're waiving that, and we're waiving that. When it comes to predominance, they want to say, well, maybe we overpaid a bunch of claims and, therefore, would have offset. I would just, two brief points. They were in our briefings, so I'll be quick. The one is that, A, this argument was never made to Judge Ellison, so he couldn't have abused his discretion and rejected an argument he wasn't presented with. Two, there is evidence of what the underlying vehicle value is. It's from Geico's own records. So plaintiff, we're here under a preponderance of the evidence standard. So plaintiff has evidence that the base value is X amount of dollars for each vehicle. It's in Geico's own records. Geico did not point and cannot point to a single piece of evidence suggesting that some of those vehicles were overvalued. There's no, their 30B6 witness didn't say that. There's no expert testimony to that effect. Under preponderance of an evidence standard, there's simply no, we can't rebut an argument that wasn't made in evidence that they're not pointing to. And so I think under that standard, the mere hypothetical possibility that maybe that, you know, any number of things could have happened in theory. We pointed out to some of those. They could have entered the number wrong when they were sending the check, you know. But unless there's evidence that that happens and consistently enough that it would implicate the predominance analysis, you know, hypotheticals, we've quoted the, there's a good quote from a First Circuit case that was something like, surmise and speculation do not tip the decisional scales in class certification. And their predominance argument is essentially just a series of hypotheticals about things that may have happened. With that, unless there's specific questions, I'll save the rest of my time and rely on the briefing. As we were just, we were just finishing up with the waiver, slave versus progressive arguments, I'll just start there. Plaintiffs discussed the slave factors, but we believe that the slave factors demonstrate a conflict of interest that renders plaintiffs inadequate class representatives. First, there is a significant risk that unnamed class members will forfeit their right to pursue these waived claims. And as we talked about before, ACVs comprise the vehicle value, sales tax, and fees. Under plaintiff's theory, vehicle value will necessarily have to be determined. That creates a higher risk of preclusion in the future than other claims. Second, the value of these claims is greater than the claims that are brought. The value of these claims is hundreds or thousands of dollars. In Slade, it was $7,000. Here, we're talking about 95% of the class having, at most, a claim for just over $100. And the strategic value of plaintiff's waiver is not greater than the value of the waived claims. Plaintiffs emphasize that because defendants do not believe that valuation claims are valid, that therefore, it's clear that the strategic value is zero. But to be honest, we don't believe that this case has strategic value, or this case has merits or should be certified, but here we are. Plaintiffs have been very creative in coming up with all kinds of different valuation type of arguments, and that's why the strategic value of this waiver is actually very low compared to the amounts that are at issue. What about opt-outs? The district court's solution was just to allow opt-outs, and the district court did not analyze the Slade factors in depth. Instead, the district court says, well, under Slade, 23B3 class, there will be opt-outs. That will protect the class. Here, that's just ineffective. And I think that when we're talking about waiver, we would assume that the waived claims are de minimis, not that the waived claims are much more valuable than the claims that are being pursued. But the notice here, this opt-out, opting out based on a notice would be ineffective here because if a named plaintiff were to receive the notice, review the complaint, review even the briefing in this case, they'd see that plaintiff's theory is underpayment of ACB. And it's likely that they would assume that any valuation would be included in that type of claim. These are complicated issues that we would be hoping that a class member reads and understands. It's likely on a small postcard. And that's really asking too much considering the value of these waived claims. You're basically saying no opt-out is ever going to work. That's kind of what I hear. Well, I think it's the opposite, is that we're arguing that opt-out isn't a panacea for all waiver issues, especially here where the risk of preclusion is so high and the value of the waived claims is so great. If the value of the waived claims was de minimis or there was low risk of preclusion, then opt-out might be a perfectly acceptable way to handle this type of interclass conflict. But here, there's a different set of facts. Here you have very valuable waived claims and you have a high risk of preclusion. And that's why opt-out just won't work in this case. But in addition to adequacy issues, plaintiff's ACV underpayment theory also creates insurmountable predominance issues that were overlooked by the district court. Plaintiff's ACV theory, as we've talked about, is a sum certain of vehicle value plus sales tax plus fees. But plaintiffs don't want to look at vehicle value. Plaintiffs just want to assume that the vehicle value is correct. But that's not what their theory is. Under their theory, ACV payment, we aren't just looking at the discrete components. We're looking at the totality of the loss and whether or not it was paid. Whether it was underpaid or overpaid, that is analysis that would need to be done with respect to each individual claim, which would include vehicle valuation. And you did assert below, and Judge Ellison therefore decided that there was an overpayment problem? Judge Ellison didn't really look at this issue at all. What Judge Ellison found was that plaintiffs are seeking sales tax and fees and didn't take into consideration that the plaintiff's theory is ACV underpayment, that you need to determine. On the overpayment. Oh, the overpayment. Because in both motions here in which I read, he was diving in and you were as well. I didn't see any reference to the overpayment. Overpayment slash underpayment, they're two sides to the same coin. In order to – okay, thank you. I see my time is up, unless the panel has any questions. Thank you.